# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

### Assigned on Briefs March 1, 2011 at Jackson

## CHAD ROGERS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Warren County**
**No. F-10030      Larry B. Stanley, Jr., Judge**

**No. M2010-01184-CCA-R3-PC - Filed June 7, 2011**

The petitioner, Chad Rogers, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel provided ineffective assistance at the sentencing phase of his trial by not investigating and presenting evidence of his mental illness as a mitigating factor. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Chasity C. Nicoll, Manchester, Tennessee, for the appellant, Chad Rogers.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; and Lisa Zavogiannis, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In 2005, the petitioner was convicted by a Warren County jury of theft of property over $10,000, a Class C felony, and was sentenced by the trial court as a Range II, multiple offender to nine years in the Department of Correction. His conviction and sentence were subsequently affirmed by this court on direct appeal. State v. Chad Rogers, No. M2006-01982-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 470, at *1 (June 13, 2007).

Our direct appeal opinion reveals that the conviction stemmed from the petitioner's theft of a 2003 Dodge Ram pickup truck. Id. A sheriff's deputy, who discovered the stolen

truck parked in the driveway of a residence in Pikeville, noticed a car that had been traveling down the street toward the residence make an abrupt turn into an alley when the driver saw the deputy. The deputy followed and stopped the vehicle, in which the petitioner was riding with three other men, and ordered the petitioner, who attempted to flee, back to the vehicle. Id. at *3. Upon searching the vehicle, the deputy found pieces of the stolen truck's broken steering column behind the petitioner's legs. Id. at *4. Two of the men who were with the petitioner at the time of his arrest were witnesses at his trial: Jamie Collins, who testified on the behalf of the State that the petitioner and Steve Brown stole the truck, and Steve Brown, who testified on the behalf of the petitioner that he, alone, stole the truck. Id. at *5. Brown acknowledged that he had signed a written statement to the police in which he had implicated the petitioner in the theft, but he said that "the written statement did not accurately reflect Brown's verbal comments to the police." Id.

On May 7, 2008, the petitioner filed a *pro se* petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel. Following the appointment of post-conviction counsel, he filed an amended petition in which he alleged that his trial counsel was ineffective for, among other things, failing to discuss or investigate sentencing mitigating factors with the petitioner, including evidence of the petitioner's mental issues that would have reduced his culpability for the crime.

At the evidentiary hearing, the petitioner's mother, Annette Dodson, testified that she and the petitioner's stepfather reared the petitioner because the petitioner's father, who had a "mean" personality, was incarcerated for various violent crimes. As for herself, she said that she had been diagnosed with bipolar disorder approximately ten to twelve years previous to the hearing. She was currently on medication that controlled her symptoms, but in the past she had experienced periods of rage and episodes of black-outs.

Dodson further testified that the petitioner's personality changed dramatically after he fell from a tree onto his head, breaking both arms and knocking an eye out of its socket, when he was between nine and thirteen years of age. According to her testimony, the petitioner, who had been "precious" as a young child, became extremely angry and willful after the fall. As she recalled, the petitioner, who was sent to a treatment facility to help him with his problems, was diagnosed with intermittent explosive disorder, solitary aggressive disorder, and paranoia. Copies of the petitioner's records from Bradford Health Services in Alabama, which were admitted as an exhibit to the hearing, reflect that the petitioner's discharge summary diagnosis was alcohol dependence, marijuana dependence, intermittent explosive disorder, "conduct disorder, solitary aggressive type," and "personality disorder NOS with antisocial features."

Dodson testified that the petitioner's trial counsel never interviewed her about the petitioner's childhood or his history of mental illness. On cross-examination, she acknowledged that she never brought up the petitioner's mental issues to counsel.

Steve Brown, who acknowledged that he pled guilty in connection with the case, testified, as he did at trial, that he acted alone in stealing the truck. He said that trial counsel never contacted him or prepared him for his testimony in the petitioner's trial.

Trial counsel testified that he was prepared for both the trial and the sentencing hearing and that, although he could not specifically recall, he felt confident that he met with the petitioner regarding the sentencing phase of the trial. He said the petitioner never gave him any reason to think he had any mental issues; he always "seemed sharp" when he talked to counsel and neither he nor his family mentioned anything about his having suffered any head trauma as a child or his having mental issues or a family history of mental illness. In addition, the petitioner reported to the probation officer who prepared the presentence report that he had no mental defects of any kind.

On cross-examination, trial counsel testified that he was almost certain he reviewed the presentence report with the petitioner because he recalled the petitioner's telling him that some of his numerous prior convictions listed on the report were inaccurate. He further testified that he always reviewed mitigating factors before sentencing. Therefore, the fact that he did not file any proposed mitigating factors meant that he evidently did not think any were applicable.

At the conclusion of the hearing, the post-conviction court issued extensive oral findings of fact and conclusions of law, later followed by a written order, in which it denied the petition for post-conviction relief. With respect to the claim raised in this appeal, the court found at the evidentiary hearing that counsel was not deficient for failing to investigate the petitioner's mental health history because there was nothing in the record to suggest that the petitioner suffered from any mental health issues. In a written order filed on April 14, 2010, the court further found that the petitioner's mental health records, which evidenced "a lengthy history of anti-social behavior and substance abuse," could have weighed against the petitioner at sentencing and, thus, that the petitioner could not show that he was prejudiced by counsel's failure to file the mitigating factor of his alleged mental health issues.

## ANALYSIS

On appeal, the petitioner contends that trial counsel was deficient for failing to investigate, prepare, and argue mitigation evidence of his mental health at sentencing and that his failure to do so more probably than not affected his sentence. The State responds by

arguing that the appeal should be dismissed because the petitioner's notice of appeal was untimely. The State further argues that the post-conviction court properly denied the petition because there was nothing to indicate to trial counsel that the petitioner had any mental issues to be investigated.

As a threshold issue, we first address the State's contention that the appeal is untimely. The State bases this argument on the fact that the initial order denying the petition was entered on February 20, 2009, more than a year prior to the petitioner's May 13, 2010 notice of appeal. There were, however, two orders denying post-conviction relief entered in the case: the first, February 20, 2009 order, which was apparently drafted by the district attorney; and a second, more lengthy and differently worded order, which was entered on April 14, 2010. The record also contains a motion by the petitioner, filed on February 25, 2009, objecting to "the Order submitted by the State" and requesting that a transcript of the evidentiary hearing be prepared prior to the court's entry of formal written findings of fact and conclusions of law, and an "Agreed Order For Transcript For Indigent Defendant," signed by the prosecutor, the post-conviction court, and post-conviction counsel and filed on March 17, 2009, in which the parties acknowledged that a transcript of the evidentiary hearing "need[ed] to be prepared prior to the signing of the final order."

The State asserts that the judgment became final, thereby depriving the post-conviction court of jurisdiction to enter any subsequent orders, upon the entry of the court's initial February 20, 2009 order denying post-conviction relief. It is clear from the record, however, that, although not expressly stated, the post-conviction court intended the February 20, 2009 order to be merely a preliminary order rather than the "final order" entered in the case. Moreover, in criminal proceedings the notice of appeal is not jurisdictional and "the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "In determining whether waiver is appropriate, this Court shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case." Michelle Pierre Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App. Feb. 13, 1996), perm. to appeal denied (Tenn. May 28, 1996). In light of the circumstances, we waive the timely notice of appeal requirement in the interest of justice.

We turn now to a consideration of the petitioner's claim that the post-conviction court erred in finding that trial counsel provided effective assistance at sentencing. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court

-4-

should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

We agree with the State that the petitioner has not met his burden of showing by clear and convincing evidence either that counsel was deficient in his performance for not presenting mitigation evidence of the petitioner's alleged mental illness, or that the petitioner

would have received a lesser sentence had counsel done so. As the post-conviction court noted in its oral findings, there was nothing in the record to suggest to counsel that the petitioner had any mental health issues. The petitioner not only failed to mention to counsel any history of head trauma or mental health issues, he also reported to the probation officer who prepared his presentence report that he had no mental defects. In addition, he did not demonstrate any kind of behavior or symptoms to raise counsel's concerns about his mental health. We also fail to see how any of the petitioner's juvenile diagnoses would constitute evidence of a mental condition that significantly reduced his culpability for the offense. We conclude, therefore, that the post-conviction court properly denied the petition.

## CONCLUSION

We conclude that the petitioner has not met his burden of demonstrating that he received ineffective assistance of counsel. Accordingly, we affirm the judgment of the post-conviction court denying the petition.

_____
ALAN E. GLENN, JUDGE